IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| N. JEANE WILLIAMS | § | PLAINTIFF |
| | § | |
| v. | § | CIVIL ACTION NO. 1:08CV86-LG-RHW |
| | § | |
| SINGING RIVER HOSPITAL SYSTEM | § | DEFENDANT |

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion for Summary Judgment [42] filed by the defendant, Singing River Hospital System. Upon reviewing the submissions of the parties and the relevant law, the Court finds that the Hospital is entitled to judgment as a matter of law and thus the Motion should be granted.

### FACTS

The plaintiff, Jeane Williams, an African-American female, began working at Singing River Hospital as the director of patient registration in March of 2000. (Ex. A to Def.'s Mot. at 31, 33). After she expressed concerns about the effect that job-related stress was having on her health, Williams was reassigned to the position of access manager. (*Id.* at 47). As access manager, she served as an information systems coordinator, built the computer system, maintained the computer system, audited the failed bill report, and corrected errors in patient registration. (*Id.* at 53).

On approximately September 29, 2006, Williams' co-worker and friend, Shirley Leikness, showed her a You Tube video entitled "Fry that Chicken" that Williams considered racist. (*Id.* at 62-64). The video had been sent to Leikness by another employee, Matt Perkins, using the hospital's computer system and was shown to Williams on a computer at the hospital.

(*Id.* at 83).

Williams did not immediately complain to her supervisor, Aaron Marsden, about being shown the video at work. (*Id.* at 69). She went on a previously scheduled medical leave beginning October 2, 2006, in order to undergo shoulder surgery. (*Id.* at 70). She returned to work on or about November 6, 2006, and told her supervisor that Leikness had shown her an offensive video. (*Id.* at 77, 81-82). Perkins and Leikness voluntarily apologized to her soon after she reported the incident. (*Id.* at 83-85).

While Williams was on medical leave, a project she was working on was taken over by two other employees. (*Id.* at 75). Other employees were also sent to school while she was on leave, so that they could learn how to perform her day-to-day duties. (*Id.* at 81). When she returned to work on a light duty basis, she did not have any new projects, but she did have work to do, which consisted of fixing a computer problem that caused patient social security numbers to show up in the address window when bills were mailed. (*Id.* at 70, 76-78). Soon after she returned from leave, she informed Marsden and his supervisor, Tracey Matthews, that she did not have very much work to do, and they told her that they would work on getting some projects for her. (*Id.* at 73-74, 76-77).

Williams sent emails to the human resources director and Chris Oubre,[1] requesting an update regarding the investigation into the offensive video, and Oubre told her that they would inform her of the results of their investigation by December 1, 2006. (*Id.* at 90-91). On November 29, 2006, Williams resigned her position at the hospital, and gave the hospital notice

---

[1] Chris Oubre was Tracey Matthews' supervisor and served as the Director of Information Systems at the hospital. (*Id.* at 76-77; Ex. I to Def.'s Resp.).

that she would be leaving in twenty-eight days. (*Id.* at 92-93, 94). On December 5th and 6th, Oubre required Perkins and Leikness to apologize to Williams in his presence. (*Id.* at 96-98). Perkins and Leikness were also "written-up" and were required to review the hospital's ethnicity policy and internet policy. (*Id.* at 95-96).

After she resigned, Williams trained other people to take over her job duties, which she alleges were taken away at the end of November. (*Id.* at 106, 108). Williams gave the following explanation for her November 29, 2006, resignation: "I felt I was forced to resign because I had no duties and no one would give me any idea what I was going to do. Everyone was going to get back to me and time was passing." (*Id.* at 109). She also explained: "The video made me angry. But no work and the fear that I'd be fired for nothing to do was why I resigned. The video made me angry and it hurt my feelings. But I quit so that I wouldn't be fired." (*Id.* at 112).

Aaron Marsden has testified by affidavit that Williams told him about the video and that she only had one project in the same meeting on November 6, 2006. (Ex. Q to Def.'s Reply). He testified that he did not intentionally delay in acting upon her request for additional work, but, due to his other job duties, he did not take action immediately because Williams had work to do. (*Id.*) Marsden explained that he was not responsible for assigning job duties to Williams but was her contact person for administrative issues such as benefits and attendance. (*Id.*) Oubre testified by affidavit that he was unaware that Williams had requested additional work until she resigned, but he would have immediately given her additional tasks had he been aware. (Ex. I to Def.'s Mot.)

Williams filed an EEOC charge alleging retaliation on May 8, 2007, and filed this lawsuit on July 2, 2007. In her First Amended Complaint against the hospital, she alleged race

discrimination, retaliation, the tort of outrage, and constructive discharge. The hospital filed a Motion for Summary Judgment, asserting that it is entitled to summary judgment as to all of Williams' claims. In response to the Motion, Williams conceded that her claims of race discrimination, the tort of outrage, and constructive discharge should be dismissed. Therefore, only her claim that the hospital retaliated against her for complaining about the offensive video remains at issue.

## DISCUSSION

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action." *Aryain*, 534 F.3d at 484 (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)). If the employer satisfies this burden, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason. *Id.*

It is undisputed that Williams engaged in a protected activity when she complained about the video. Therefore, it must be determined whether the decrease in work assignments constituted an adverse employment action.[2] In order to demonstrate an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable

---

[2] Williams no longer contends that her resignation was a constructive discharge.

worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). When making this determination, it is important to separate significant harms from trivial harms. *Burlington*, 548 U.S. at 68. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* As the Supreme Court has explained: "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* at 69. Thus, an act that would be immaterial in some circumstances will be material in others. *Id.*

The reassignment of job duties is not automatically considered materially adverse. *Id.* at 71. However, in *Burlington*, the Court held that a reasonable jury could find that a reassignment is materially adverse where the plaintiff was transferred from a forklift operator position to track labor duties, because there was evidence that the forklift position was an indication of prestige, while the track duties were more arduous and dirtier. *Id.* Meanwhile, in *Browning v. Southwest Research Institute*, the Fifth Circuit noted that the loss of job responsibilities can in some circumstances constitute an adverse employment action but held that the plaintiff's loss of responsibilities was not materially adverse where it was undisputed that the employer routinely rotated employees in and out of leadership positions. *Browning v. Sw. Research Inst.*, 288 Fed. Appx. 170, 178 (5th Cir. Aug. 5, 2008).

In the present case, the Court finds that a reasonable employee would not be dissuaded from reporting racial discrimination by the reassignment of job responsibilities while she is on

medical leave or light duty following surgery.  Additionally, the employer's failure to immediately assign new special projects to an employee returning from medical leave is not materially adverse, particularly where, as here, the employee had work to do when she returned from leave.

In the alternative, the Court finds that Williams cannot demonstrate the final element of a prima facie claim for discrimination– a causal connection.  In order to satisfy this element of a prima facie claim for discrimination, the employee must demonstrate that the adverse employment action would *not* have occurred "but for" the employee's protected activity. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).  In the present case, Williams admitted that the project she was working on before she went on leave was reassigned to other employees while she was on leave.  She also admitted that other employees were trained to perform her day-to-day duties while she was on leave.  However, she did not complain about the video until *after* she returned from leave.  Therefore, Williams cannot demonstrate that the decrease in work would not have occurred but for her protected activity.  As a result, Williams has not set forth a prima facie case of retaliation.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [42] filed by the defendant, Singing River Hospital System, is **GRANTED**.  This lawsuit is hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 26th day of February, 2009.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE